UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

RECEIVED
USDC CLERK, CHARLESTON, SC

Jesse E. Boyer, Sr.; and
Marilyn L. Boyer,

        Plaintiffs,

vs.

Annie Lee Finley; Roy Finley, Jr.;
Michael Taylor, Jr.; Michael J. Blitch;
State of South Carolina;
Judge Patrick R. Watts;
Attorney Robert W. Polk; and
Ashley Survey Company,

        Defendant(s).

C/A No. 2:07-1868-DCN-RSC

Report and Recommendation

## BACKGROUND

Plaintiffs, who are residents of Charleston, South Carolina, have filed this action alleging this Court has jurisdiction to hear this matter pursuant to 42 U.S.C. §§ 1983, 1985, and 1986, and pursuant to 18 U.S.C. §§ 241 and 242. They allege the defendants have denied them the right to enter and exit their property and the right to an easement for electric power. Plaintiffs cite to 28 U.S.C. § 1441 claiming they cannot obtain relief in any form or any other court.

According to the complaint, the plaintiffs purchased a seven (7) acre tract of land in June 2000 in Dorchester County, South Carolina. Plaintiffs allege this land is adjacent to a hunting club owned by defendant Blitch (hereinafter "Blitch"). Plaintiffs

1

also claim that one of their neighbors, defendant Pendarvis (hereinafter "Pendarvis"), told them they could not put a mobile home on the land "because I'm the wiring and plumbing inspector for Dorchester County and this property will not perk for a septic tank." Plaintiffs allege a steel cable was placed across their driveway by Pendarvis, preventing them from accessing their property. According to the plaintiffs, Pendarvis also contacted all the people adjacent to the seven acre parcel in an attempt to prohibit the plaintiffs from entering their land.

As a result, the plaintiffs contacted Blitch who resides in Florida. Plaintiffs knew that Blitch owned part of the blocked driveway and asked if they could access their property. Plaintiffs allege that Blitch spoke with Pendarvis and then told the plaintiffs he would "prefer that [they] stay off his land." Plaintiffs then had the land surveyed by defendant Ashley Survey Company (hereinafter Ashley Survey).

Plaintiffs filed suit in a court of Common Pleas in October 2002 against Annie Lee Finley (hereinafter Annie Finley), her brother (Clayborne) Pendarvis, and Blitch. Defendant Polk (hereinafter Polk) represented Annie Finley. Polk contacted plaintiffs and asked them to dismiss Annie Finley from the action which plaintiffs did, however, plaintiffs now allege this "was a mistake". Plaintiffs also allege that the presiding judge, defendant Watts (hereinafter Watts) dismissed Pendarvis with

2

prejudice because he was employed by Dorchester County. Blitch did not attend the hearing claiming he was never notified. Plaintiff alleges Watts refused to issue an order that plaintiffs could use the driveway. Plaintiff further alleges that Annie Finley, Polk, and Pendarvis "willfully and intentionally lied pertaining to a second driveway to enter and exit the seven (7) acres" and plaintiff maintains this driveway was unknown to him at the time he purchased the land.

Plaintiffs also claim that Annie Finley's son, Roy Finley, Jr. (hereinafter Roy Finley), approached them in March 2005 insisting the plaintiffs clear a 20 x 100 right of way along the edge of Annie Finley's property which would allow the plaintiffs to access their land. Plaintiff needed electrical power to run to his land so plaintiff mortgaged his home, purchased a $27,000.00 back hoe, a $2,000 low boy trailer, and three chain saws. He then began to clear a 20 x 550 foot strip on his own land, as well as the 20 x 100 strip Roy Finley asked him to clear. Plaintiffs showed an engineer with the Edisto Electric Power Company where to place power poles along what plaintiffs thought would be their easement. Plaintiffs allege the clearing of the land cost $2300.00. Subsequently, Roy Finley "changed his mind" telling plaintiffs he would not let them use the cleared land as an easement for electrical power.

Plaintiffs then filed a second lawsuit in April of 2006 in a

Court of Common Pleas against Annie Finley and Roy Finley. The case was referred to a Master in Equity (Watts). Plaintiff claims that Polk told plaintiffs they must get an attorney, and could not represent themselves because they did not have a license to practice law in South Carolina. On the day of the hearing Watts told plaintiffs he had received a fax from Polk indicating that Annie Finley and Roy Finley were sick. The hearing was rescheduled. According to the plaintiffs, Watts told the plaintiffs they must pay an additional $100.00 towards their filing fee. Plaintiffs allege they had already paid $150.00 to file their case. Plaintiffs were also told they had to employ their own court reporter.

Plaintiff's allege the re-scheduled hearing was held without the plaintiff's being present. Although it is not entirely clear from the pleadings, it appears the plaintiffs had sought a continuance. On May 5, 2007, the plaintiffs received a final order from the court stating the plaintiffs' request for a continuance was denied, and judgement for the defendants was granted.

Subsequently, plaintiffs contacted the power company about placing poles so the plaintiffs could receive electricity. Plaintiff was told that the power lines would have to cross defendant Taylor's property (hereinafter "Taylor"). Taylor worked for the South Carolina Electric and Gas Company (SCE&G). Plaintiff alleges Taylor used SCE&G electrical poles and a cable to block the

driveway plaintiffs were using.

Plaintiff also argues that Ashley Survey should have disclosed the second driveway. Attempts to contact Ashley Survey failed. Plaintiff faxed the first page of his complaint to Ashley Survey and they, in turn, forwarded it to Polk. Polk contacted Watts and a second "Final Order and Judgement" was mailed to the plaintiffs. Plaintiffs objected to the second order. Plaintiffs allege that Watts then filed a letter with the Sheriff's Department ordering the Department to incarcerate plaintiff, Jesse Boyer, for fifteen (15) days if he came to Dorchester County.

Plaintiff claims defendants have slandered him and injured his reputation. Plaintiff also alleges he has been denied the right to the equal protection of the laws secured to him by the 14th Amendment.

Plaintiffs seek use of the driveways, or in the alternative, plaintiffs ask that Annie Finley and Roy Finley be ordered to purchase plaintiff's land, plus pay for the additional improvements which were made by the plaintiffs. Plaintiff also asks that Ashley Survey be forced to purchase the land. Plaintiff seeks removal of the cables blocking the driveways. Additionally, plaintiff seeks damages from Polk. Plaintiff asks for punitive damages from all defendants.

## DISCUSSION

Plaintiffs allege this matter is properly before the court

pursuant to 42 U.S.C. §§ 1983, 1985, and 1986, 18 U.S.C. §§ 241 and 242, and 28 U.S.C. § 1441.

A **_defendant_** in a case in a state court may remove that case to a federal district court only if the state court action could have been originally filed in a federal district court. 28 U.S.C. § 1441. Generally, a case can be originally filed in a federal district court if there is diversity of citizenship under 28 U.S.C. § 1332 or there if there is so-called "federal question" jurisdiction under 28 U.S.C. § 1331. Various federal courts have held that the removal statutes are to be construed against removal jurisdiction, and in favor of remand. See, e.g., Cheshire v. Coca-Cola Bottling Affiliated, Inc., 758 F. Supp. 1098, 1102 (D.S.C. 1990)(collecting cases); and Bellone v. Roxbury Homes, Inc., 748 F. Supp. 434, 436 (W.D.Va. 1990).

It is well-settled that a Notice of Removal must be filed by a **_defendant_** in the state court action within thirty days after the complaint in state court is served or within thirty days *after* the case becomes removable. See 28 U.S.C. § 1446; and Heniford v. American Motors Sales Corporation, 471 F. Supp. 328 (D.S.C. 1979), appeal dismissed, 622 F.2d 584 (4th Cir. 1980)[Table]. In the instant case, however, the **_plaintiff_** filed the state court actions and both were adjudicated prior to the filing of this complaint in this Court.

Likewise, the plaintiffs can not rely upon Title 18 of the

6

United States Code to confer this Court with subject matter jurisdiction over their complaint. This Title is comprised of criminal statutes. The United States Attorney for a particular District is the appropriate "plaintiff" in actions which are filed pursuant to Title 18.

Plaintiff's maintain that this action is also appropriate for this Court's consideration because their civil rights have been violated pursuant to 42 U.S.C. § 1983. The named defendants, however, are not subject to suit pursuant to Section 1983.

Defendant Watts is absolutely immune from a claim for damages. *See Mireles v. Waco*, 502 U.S. 9, 116 L.Ed.2d 9, 112 S.Ct. 286 (1991); *Stump v. Sparkman*, 435 U.S. 349, 351-364 (1978); *Pressly v. Gregory*, 831 F.2d 514, 517 (4th Cir. 1987)(a suit by South Carolina inmate against two Virginia magistrates); and *Chu v. Griffith*, 771 F.2d 79, 81 (4th Cir. 1985)("It has long been settled that a judge is absolutely immune from a claim for damages arising out of his judicial actions."). *See also Siegert v. Gilley*, 500 U.S. 226, 114 L.Ed.2d 277, 287, 111 S.Ct. 1789 , (1991)(immunity presents a threshold question which should be resolved before discovery is even allowed); *Burns v. Reed*, 500 U.S. 478, 114 L.Ed.2d 547, 562, 111 S.Ct. 1934 (1991)(safeguards built into the judicial system tend to reduce the need for private damages actions as a means of controlling unconstitutional conduct); and *Mitchell v. Forsyth*, 472 U.S. 511,

526 (1985)(absolute immunity "is an immunity from suit rather than a mere defense to liability"). As a result, defendants Watts should be summarily dismissed from this action.

The State of south Carolina cannot be sued in a federal court without their express consent. The defendant is immune from suit under 42 U.S.C. § 1983 because the Eleventh Amendment to the United States Constitution divests this court of jurisdiction to entertain a suit brought against the State of South Carolina or its integral parts. The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

See *Alden v. Maine*, 527 U.S. 706, 144 L. Ed. 2d 636, 119 S. Ct. 2240 (1999); See also *Federal Maritime Commission v. South Carolina State Ports Authority, et. al.*, 122 S. Ct 1864, 2002 WL 1050457 (U.S. May 28, 2002) (state sovereign immunity precluded Federal Maritime Commission from adjudicating a private party's complaint against a non-consenting State).

The State of South Carolina has not consented to suit in a federal court. See S. C. Code Ann. § 15-78-20(e)(Law. Co-op. 2004), which expressly provides that the State of South Carolina does not waive Eleventh Amendment immunity, consents to suit only in a court of the State of South Carolina, and does not consent to

suit in a federal court or in a court of another State.

Additionally, the plaintiff must establish in his Section 1983 suit that the defendants, such as Annie Finley, Roy Finley, Taylor, Blitch, Polk, and Ashley Survey have acted under color of state law. In order to state a cause of action under 42 U.S.C. § 1983, a plaintiff must allege that: *(1)* the defendant(s) deprived him or her of a federal right, and *(2)* did so under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). For example, an attorney does not act under color of state law. This is a jurisdictional prerequisite for any civil action brought under 42 U.S.C. § 1983. *See Deas v. Potts*, 547 F.2d 800 (4th Cir. 1976)(private attorney does not act under color of state law).

Plaintiffs also claims this action is proper pursuant to 42 U.S.C. § 1985. They contend that defendants have deprived plaintiffs of equal protection of the laws. Section 1985 requires that plaintiffs allege the deprivation has occurred due to race, color, or national origin, however, no such allegation has been made by the plaintiffs. Even assuming that plaintiffs are proceeding under the so-called "first clause of § 1985(3)" which would encompass race, national origin, or color, plaintiffs claim fails. *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267 (1993). The Supreme Court has said that to prove a private conspiracy under the clause, "a plaintiff must show (1) that some racial, or perhaps otherwise class-based, invidiously discriminatory

animus lay behind the conspirators' actions, and (2) that the conspiracy aimed at interfering with rights that are protected against private as well as official encroachment . . . ." Id. at 267-68 (internal citations and quotations omitted). Thus, while § 1985(3) does reach private conspiracies, Griffin v. Breckenridge, 403 U.S. 88 (1971), as Bray makes clear, the rights encompassed by the second prong of the Court's private conspiracy analysis are very narrow, and generally include only the Thirteenth Amendment protection against involuntary servitude and the right of interstate travel. Bray, 506 U.S. at 278. Accordingly, because plaintiffs have failed to identify a right protected against private action, their § 1985(3) claim fails.

Next, plaintiffs' claim under § 1986 must fail because their § 1985(3) claim has failed. Section 1986 is derivative of § 1985. The former rises and falls with the latter. The statute itself makes this dependent relationship clear. No claim will lie under § 1986 unless a valid claim has first been established under § 1985. Consequently, plaintiffs cannot proceed under Section 1986.

Finally, longstanding precedents preclude the United States District Court for the District of South Carolina from reviewing the findings or rulings made by state courts. See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983), where the Supreme Court of the United States held that a federal district court lacks authority to review final determinations of state or

10

local courts because such review can only be conducted by the Supreme Court of the United States under 28 U.S.C. § 1257. *See also Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). This prohibition on review of state court proceedings or judgments by federal district courts is commonly referred to as the *Rooker-Feldman* doctrine or the *Feldman-Rooker* doctrine. *See, e.g., Ivy Club v. Edwards*, 943 F.2d 270, 284 (3rd Cir. 1991), *cert. denied, Del Tufo v. Ivy Club*, 503 U.S. 914 (1992). The *Rooker-Feldman* doctrine applies even when a challenge to a state court decision concerns a federal constitutional issue. *District of Columbia Court of Appeals v. Feldman, supra*, 460 U.S. at 484-486, and *Arthur v. Supreme Court of Iowa*, 709 F. Supp. 157, 160 (S.D.Iowa 1989). The *Rooker-Feldman* doctrine also applies even if the state court litigation has not reached a State's highest court. *Worldwide Church of God v. McNair*, 805 F.2d 888, 893 & nn. 3-4 (9th Cir. 1986). *See also* 28 U.S.C. § 1738 (federal court must accord full faith and credit to state court judgment); and *Robart Wood & Wire Products v. Namaco Industries, Inc.*, 797 F.2d 176, 178 (4th Cir. 1986), *cert. denied, Namaco Industries, Inc. v. Robart Wood & Wire Products*, 479 U.S. 1032 (1987).

Thus, the plaintiff may not use a civil rights action to challenge the determinations or rulings of a state court. *See Anderson v. Colorado*, 793 F.2d 262, 263 (10th Cir. 1986)("[I]t is well settled that federal district courts are without authority to

review state court judgments where the relief sought is in the nature of appellate review."); and *Brinkmann v. Johnston*, 793 F.2d 111, 113 (5th Cir. 1986), where a *pro se* plaintiff brought a § 1983 action against his ex-wife, her attorney, and the judge who presided over the divorce action. The United States Court of Appeals for the Fifth Circuit held that characterization of a suit as a civil rights action is ineffective to defeat the well-settled rule that litigants may not obtain review of state court actions by filing complaints in lower federal courts "cast in the form" of civil rights suits. *See also Wise v. Bravo*, 666 F.2d 1328, 1333 (10th Cir. 1981); and *Gurley v. Superior Court of Mecklenburg County*, 411 F.2d 586, 587-588 & nn. 2-4 (4th Cir. 1969)(holding that federal district courts and United States Courts of Appeals have no appellate or supervisory authority over state courts). *Accord Hagerty v. Succession of Clement*, 749 F.2d 217, 219-220 (5th Cir. 1984)(collecting cases), cert. denied, *Hagerty v. Keller*, 474 U.S. 968 (1985); *Kansas Association of Public Employees v. Kansas*, 737 F. Supp. 1153, 1154 (D.Kan. 1990); and *Fuller v. Harding*, 699 F. Supp. 64, 66-67 (E.D.Pa. 1988), affirmed, *Fuller v. Harding*, 875 F.2d 310 (3rd Cir. 1989)[Table].

This principle was recently reaffirmed, but limited, in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 125 S. Ct. 1517, 161 L.Ed.2d 454 (2005)(*Rooker-Feldman* doctrine applies only when the loser in state court suit files suit in federal

district court seeking redress for an injury allegedly caused by the state court's decision itself). Based on the principles announced in *Exxon Mobil Corp.*, *supra*, the Fourth Circuit Court of Appeals concluded its interpretation of the doctrine had been too broad. Thus, in *Davani v. Virginia Dept. of Transp.*, — F.3d —, 2006 WL 91807 (4th Cir. 2006) the Fourth Circuit Court of Appeals held the *Rooker-Feldman* doctrine did not apply to Davani because his suit did not challenge the state court's decision, but instead sought redress for an injury allegedly caused by appellees. His case was reversed and remanded so the District Court could give full consideration to the preclusion arguments of the appellees. *Cf. Lance v. Dennis*, — S. Ct. —, 2006 WL 386360 (2006); *Rose v. Board of Supervisors of Fluvanna County*, 2006 WL 240979 (W.D. Va.).

Applying these recent holdings to the above-captioned matter, it is clear plaintiffs are challenging the state court decision. Plaintiffs argue that the defendants, including the presiding judge, conspired against them. Thus, there can be little doubt the plaintiffs are attempting to appeal the state court decision in search of what they believe is a fairer result.

## RECOMMENDATION

Accordingly, it is recommended that the District Court dismiss the complaint in the above-captioned case *without prejudice* and without issuance and service of process. *See Denton v. Hernandez*, *supra*; *Neitzke v. Williams*, *supra*; *Haines v. Kerner*, *supra*; *Brown*

v. *Briscoe*, 998 F.2d 201, 202-204 & n.* (4th Cir. 1993), *replacing* unpublished opinion originally tabled at 993 F.2d 1535 (4th Cir. 1993); *Boyce v. Alizaduh, supra; Todd v. Baskerville, supra*, 712 F.2d at 74; 28 U.S.C. § 1915(e)(2)(B); and 28 U.S.C. § 1915A [the court shall review, as soon as practicable after docketing, prisoner cases to determine whether they are subject to any grounds for dismissal].

*[signature]*
Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina
Date *August 6, 2007*

**The plaintiff's attention is directed to the important notice on the next page.**

## Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> P.O. Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).